Good morning, Your Honor. Philip Gregory, on behalf of the City of San Jose, I'd like to reserve five minutes for Mr. Kachet to present rebuttal. In deciding this 12B6 motion, the trial court determined that the Supreme Court's baseball trilogy exempted baseball beyond the reserve clause in this franchise relocation case. San Jose's not asking this court to overrule that Supreme Court trilogy. That's a relief. Well, Your Honor, simply those cases don't apply. Justice Oliver Wendell Holmes is one of the great 20th century jurists, and his Commerce Clause analysis in federal baseball was totally appropriate at the time, as Justice Alito put in a recent Supreme Court Historical Society article. However, that analysis no longer applies. Further, because the two other decisions, Toulson and Flood v. Kuhn, completely relate to the reserve system. But our court's decisions in Portland baseball don't. The decision in Portland baseball simply has a very... It's terse, but it's there. It's terse. And it wasn't about the reserve clause. That's correct, Your Honor. Aren't we bound by that? No, Your Honor, you're not bound by that decision because it doesn't involve the facts that are present in this case. This case is a claim by the city of San Jose that its option agreement was with the Oakland A's will not be successful because of the acts of these defendants. Well, but your argument, as I heard it, was that we should limit the antitrust exemption recognized by the Supreme Court to the reserve clause. And our court didn't do that in Portland baseball. It spoke tersely. But with regard to situations that didn't involve the reserve clause, we're bound as a three-judge panel by those decisions, aren't we? Well, Your Honor, you are bound by the... as a three-judge panel, but you're bound to the facts of Portland baseball. Stare decisis does not extend beyond the facts of the case. Well, where do you find in Portland baseball any support for your proposition that the Supreme Court's antitrust exemption is limited to the reserve clause? It seems to me that Portland baseball contradicts that. Portland baseball simply states, Your Honor, the plaintiff's claim for relief under the antitrust laws was properly dismissed, citing Flood v. Kuhn. That's it. Yeah, but was Portland baseball about the reserve clause? No, it wasn't, Your Honor. What it was about was the Portland baseball club's belief that it was entitled to be paid because there were new teams, major league baseball teams, moving into Seattle and into San Diego. But, Your Honor, if this citation in Portland baseball to Flood v. Kuhn is... Well, our court didn't read Flood v. Kuhn as being limited to the reserve clause. But, Your Honor, Flood v. Kuhn says it's limited to the reserve clause. But Portland baseball doesn't. Portland baseball applies it outside the reserve clause context, and aren't we bound by that precedent? Your Honor, the issue is, in Portland baseball, it's simply a different factual situation, and exemptions need to be narrowly construed. You've gone over this three times with Judge Christin. Let me make an effort. You would have the triple header, right, the Supreme Court trilogy? Yes, Your Honor. And you want to say, well, look, you've got to read that one narrowly as applying only to the reserve clause. That's your argument. Yes, Your Honor. And I think Judge Christin's question pointing to Portland baseball, and I'm glad he asked the question because if he hadn't, I would have. We have a case that reads it more broadly than that. So at least in the Ninth Circuit, the trilogy cannot be read as limited to its facts. It has to be read somewhat more broadly in light of Portland baseball. So the question, as I understand it, is, given that it's more broadly than the reserve clause, is how broad, what is the limit? What is the limit? And we know it's not just the reserve clause because we have already had a ruling which is binding on the three of us. Thank you, Your Honor. So how much broader, what is the rule that applies in the Ninth Circuit? Well, first off, the rule that applies in the Ninth Circuit as to franchise relocation cases was set forth in the San Diego Clippers case, which states that the law of this circuit for franchise relocation for sports leagues is the rule of reason. And that's what it states. I'm not a sports guy, so I don't know. Do Clippers play a lot of baseball? No, they play basketball, Your Honor. So why does that matter, since we're dealing with a baseball exception? Certainly, Your Honor. I think Justice Blackmun would be horrified. Certainly, Your Honor. Well, Justice Blackmun stated that the exemption applies to the unique characteristics and needs of baseball. And he stated it in the context of the reserve system. What this, the standard this Court should apply is whether or not franchise relocation is one of the unique characteristics and needs of baseball. Isn't that specifically addressed in the Curt Flood Act, to your detriment? No, Your Honor. Franchise relocation. No, Your Honor. The Curt Flood Act is agnostic to franchise relocation. It says it doesn't do anything one way or the other, along with several other points, such as broadcasting. And specifically subsection B states that it deals with, and I can go through the litany, but it says it takes no position one way or the other. No court shall rely on the enactment of this section as a basis for changing the application. Correct. So if we take the status quo and then it specifically deals with it's not going to affect franchise relocation, it would sound like the status quo is the exemption applies to franchise relocation. No, Your Honor. It simply says that whatever is the status quo, that's what it is. And what is the status quo? Well, the issue is whether or not franchise relocation in a sports league should be subject to the rule of reason. And the law of this circuit in the Clippers case is that it is. That's what the Clippers decision specifically states. The point being, baseball's unique characteristics and needs do not include franchise relocation, because that's something every business faces. Every business has to decide whether or not it's going to pick up stakes and move someplace else. But it does involve whatever was at stake in Portland Baseball, right? Yes. And what's your – I get these rules confused in my mind. What was that? Well, that was a contract that the Portland Baseball Club allegedly had that it would be paid funds if a major league franchise opened up, in essence, on the West Coast. How is that different than the relocation clause? Because in – It seems to me like sort of two sides of a coin, doesn't it? If I may, Your Honor, what Portland Baseball talks about is a new franchise being created in a separate city. And as a result, the Portland Baseball Club, whether or not it's reimbursed – How is that different from saying you're going to move an existing franchise into the territory of another franchisee? How is creating a new one sort of generically different? How is that so much more baseball-related than this rule here? Because here, Your Honor, San Jose has a contract with an existing business. In this case, the A's. I don't think you understand my question. I do understand how they are physically different. Yes. But the question you need to answer is how is one uniquely baseball-specific, like the reserve clause, and how is this thing, the rule in Portland Baseball, uniquely baseball-related, whereas this rule is not? And that's where it ties into the reserve system, Your Honor, because what Portland Baseball was was a minor league club. And it's the minor league system and the players coming into the major leagues subject to the reserve clause in their contracts that is the subject of Toulson and Flood v. Kuhn. What the court's trying to do there is preserve the reserve system. That is the opening quote of Justice Blackmun's opinion in Flood. For the third time in 50 years, the court has asked specifically to rule that professional baseball's reserve system. I do know what Flood says. What I'm talking about is Portland Baseball. But, Your Honor, the reserve system. That didn't have anything to do with the reserve clause, right? Not the clause, Your Honor, but the system. And the point being it's the minor league system that Justice Blackmun is talking about in Flood v. Kuhn. The minor leagues are part of the institution that Justice Blackmun is trying to preserve. In fact, he quotes from the circuit court opinion where he says that if we were to overturn the exemption, baseball would be in ruin. What he's speaking to there is the minor league system would be in ruin. And the Portland Baseball Club was a minor league club. That's why Portland Baseball fits in with Flood v. Kuhn. Here you have a non-baseball entity, the city of San Jose, suing baseball because baseball has failed to allow an existing club to change its ballpark into a different area or a different market. And that's completely different from what the reserve system is all about in Flood v. Kuhn and in Portland Baseball. You want to spend a minute talking about the city's standing to raise this? Certainly, Your Honor. Are they any different than restaurateurs in the city or limo companies or the people who run airlines in the city who say, well, we'd all profit if only San Jose had a baseball team? Well, Your Honor. How is the city suffering injury any more specific than that? Well, Your Honor, San Jose has an option agreement with the A's. San Jose has spent money under the complaint it's alleged. San Jose has spent money and stands to receive $7 million should the A's exercise the option agreement. It may receive more money if it sells the property to somebody else. Is there any evidence of injury suffered by your client? If I may, Your Honor, that is a fact that San Jose believes is inadmissible, in fact, objectionable. Well, I'm just speculating. I'm not basing it on evidence. I'm saying where's the antitrust injury if there's no reason to believe that San Jose has, in fact, suffered a loss, that the value of the property was exaggerated in the option agreement and the externals would suggest it probably wasn't? So where's the antitrust injury? Well, Your Honor, again, that's an issue of fact. The fact is that San Jose has a deal to sell it to the A's for $7 million. It spent money on that deal, and the A's want to exercise that option agreement, but baseball has refused to allow the A's to locate in San Jose. Those facts are not contested. As a result, San Jose will not get the funds for the under the option agreement and will lose the funds it spent getting the property ready under the option agreement. Now, it may be an issue of fact about whether or not San Jose, in fact, lost money, but that comes later, Your Honor, after discovery, not at the 12B6 stage, and that's where we are right now. For standing purposes, San Jose is here with an option agreement that the A's have said they will exercise. That's antitrust injury to the competitive process. It doesn't have to be an injury to an individual competitor, as this Court well knows. And it's much like the court's example in McCready where they said the psychiatrist, if they have a conspiracy against a bank for loaning to psychologists, the bank has a claim and the psychologists have a claim. I'm just trying to see if San Jose is any different than a consumer. Can a consumer complain now because two companies are merging? And they say, oh, well, my prices will rise. But, Your Honor, the difference No, I'm asking a question. Can a consumer complain about a proposed merger because they say, oh, they're allowed to merge and my prices will rise? I don't believe it can, Your Honor. No. So why isn't the city just sort of a bystander? You know, they could profit, they could lose, but why do they have standing to Because they've lost the proceeds How are they different from everybody else? So the people of the surrounding area say, oh, we want to go to the baseball games. Because the city is not like, for example, the city of Roanert Park in that decision where it's all speculation about whether or not the property would be purchased and developed in Roanert Park. Here, the property is going to be purchased and developed in San Jose if the A's are permitted by Major League Baseball to relocate to San Jose. Excuse me, Your Honor. You're eating from scotch, I'm sorry. Thank you, Your Honor. We'll hear from the other side. Good morning, Your Honors. John Kecker for Major League Baseball. I can talk about the six Supreme Court cases that say, five of them say, what's exempt is the business of baseball. That's the limitation. It's the business of baseball. And I can talk about cases that define that at the edges. There could be some dispute, but there can be no dispute, we believe, under precedent, starting with the Ninth Circuit precedent, starting with the fact that the Supreme Court precedent with Toulson and Federal Baseball dealt with league formation and so on. That location, relocation of the franchise is squarely in the core of the business of baseball. And what the Supreme Court has said is that if anybody's going to change that, it should be Congress. They have better mechanisms to change it. That's where it should go. They look at it all the time. It's not a case of mere inaction. We've cited the fact that before Flood, between Toulson and Flood, there were close to 50 bills introduced into the Congress. After Flood, we have cited 45 different hearings. Congress loves to get baseball in and ask questions and investigate things. And in 1998, as has been noted, they passed the Curt Flood Act, which very carefully carved out a piece of baseball that's going to be treated under the antitrust laws while leaving the status quo for everything else. We rely on Judge White's careful opinion. He didn't think that any fair reading of these cases could yield anything other than what he said, which is the business of baseball is exempt, and this is squarely within the business of baseball. The only part of his opinion that we disagree with or wanted to add to, not so much disagree with, is the part that he didn't reach, which was antitrust standing under Section 16, when he said that because he decided that the business of baseball was exempt, he didn't need to reach the question of whether or not there was antitrust injury here. He did say he thought ---- Well, if he's right on the merits, then there can't be antitrust injury, right? Because there's exemption from the antitrust laws. So it's pretty much pathological. I suppose that's right, Your Honor. I hadn't thought about it that way. The way I thought about it was the Supreme Court has said that the antitrust laws don't apply to this situation, but in any event, a person bringing a claim saying that, oh, yes. A theoretical claim. A theoretical claim that, yes. If it were, then he still would have standing anyway. Yes. But that's in fact right, though, isn't it? If the antitrust, baseball antitrust exemption applies, it can't possibly be antitrust injury. That's correct. And the case is probably best decided on the standing grounds, right? Well, that's, I guess, the question. The reply brief here read a lot like a cert petition. And we can imagine somebody might want to take a shot at the Supreme Court. We think this is, and our position is that ---- We're just sort of a moot court for the Supreme Court? No. It's not a moot court. It's a request from Major League Baseball that you decide that there is no antitrust standing in any event so that if somebody is thinking, should we try to open this up again, is this the right case to do it? Actually, this would be the hypothetical ruling.  then there would not be standing for anybody in the city's position to claim an antitrust injury. That's the opinion you'd like us to write. I'm not about ---- In the Yale Law Journal, perhaps? I'm not about to ask you to write a hypothetical opinion, Your Honor. But it would be hypothetical, wouldn't it? Under your theory of the case. I don't think that the conclusion that says Judge White was right about the exemption applying and, second, they don't even have standing to make the arguments about whether or not the exemption should apply is ---- I don't think that's hypothetical. I think that's ---- We raised it below. I think you're referring to judicial castmanship. You can cast an opinion that way. But it would be a little difficult, wouldn't it? I mean, just between us. Just between us. The rest of you put your hands over your ears. Don't listen. Well, you know, I don't know about my colleagues, but I'm always thinking about how an opinion ---- I mean, I suspect a lot of judges think that way, you know, when we're asking questions. How would we write an opinion making this point? And I just, as I'm sitting here thinking about it, I think it would be very hard to do the kind of thing you want us to do, to say there's no ---- you know, this is exempt from antitrust laws. But let me tell you what would happen if it weren't exempt. They wouldn't be standing. No. The opinion that I would hope would be written would start, it would say there's two problems with this case. One is that they're wrong in the merits, and second, they don't even have the standing to bring it. Okay. Fair enough. And that's the argument that we're making. I submitted with respect ---- in the reply brief, we got this inextricably intertwined language in about three pages of it. It was only mentioned in one sentence in the first brief. I submitted a couple of cases. One is Oregon laborers. Two years later, same kind of case for the Washington State Hospitals. Okay. Well, let's talk about that, Van. Let's get into that hypothetical in another world. The city is in a different position than taxi drivers or restaurants or even consumers of what do you call them, spectators, fans, you know, people who go to baseball games, right? The city is in a different position in terms of the injuries, like the sufferers. It has a contract. It has spent money. And it has, as an entity, its tax base will be affected. This will attract presumably tourism to the city and so on. So it is really in a different position, isn't it? Is this going to come to pass? We think that overall they're in a weaker position. First of all, the tax base and the general tax benefits, Hawaii versus Standard Oil, we believe say that's not the appropriate consideration for Clayton Act antitrust injury. What they need to look at are their commercial interests. Their commercial interests, they first say, have to be an injury in the relevant market. They say that they have an injury in the provision of men's professional baseball. They're not a participant in that market. They're not a consumer in that market. They're nothing. They then come back and say, oh, we have this land and we have an option agreement with the aides. As Judge Clifton has pointed out in the brief, we have cited and given you judicial notice materials from San Jose that point out that that provision is way undervalued. What they're going to get from the aides is much less than they would get if they sold the land on the open market. There is no market for land as they try to confine it, land for baseball stadiums. This is land, land, land, and they're going to make money anyway. Our point is that unlike a hot dog vendor who says I've got a hot dog stand, I'm ready to go to sell hot dogs to somebody, I've got a limo, I'm ready to go to take people to the ballpark, San Jose has passed an ordinance saying we're not spending any money on this. That's cited in our brief. San Jose does not have a stadium. San Jose has gone out of its way to say that it's not – in short, as Judge White said, they don't have the aides because the aides haven't committed to anything. They don't have a team. They don't have a stadium. They don't have any indication that a stadium is going to be able to be built with private money. They are so remote from this injury that if you read a case like McCoy in the Western District of Washington where fans came in and said we have personally been injured by the strike and we want to sue under the antitrust laws, the Court said no standing. Businesses came in, no standing. We think that San Jose is not any closer than any of them for standing purposes. Unless the Court has questions, I'm finished. Thank you. Mr. Pritchett, we'll give you the full five minutes since I think I ate half of what happened. Let me address the standing right away and get right into that. Then I'm going to move. Can I proceed? Yeah. Let me address the standing issue. The standing issue, this is a 12-6 motion. I'm referring to the transcript that you have in front of you, or I should say the record, 94 of the record is the complaint, and the complaint states, San Jose and San Jose Redevelopment Agency has been working on the development of the ballpark since 2004. It goes on to say, and I'm going to be very brief. You can read it. It goes on to say it culminated in 2007 with the certification of the EIR. They've spent millions of dollars, quote, since 2007 the EIR has been updated and amended. This has been an expensive and time-consuming. The record shows they're out something like $6 million. So if we take the complaint on its face, if we take the complaint on its face. Are you reading from page 92 of the? 94. 94 of the complaint. It's the record. So what is? I'm looking at it, and that's under heading of the complaint dealing with the State law claims. State law claims are not preempted or something. But. Am I looking at the wrong thing here? I'm looking at page. This is excerpt of record volume 1. I'm looking at page 33 of the complaint. It is record 094. Where's in the excerpt? Where's in the excerpt of record? Volume 2. Volume 2, okay. Thank you, Chuck. And where? Page 94? It is page 94. Page 33 of the complaint. Okay, I got it. Okay. So on a 12 v. 6 motion, if we take that to be true, standing is not the issue here. What is the issue here? Wait, wait, wait. Slow down. Just throwing around money doesn't do it. I mean, you could have a business. You could have a business that says, you know, I was hoping there would be a stadium there, and I got all this contract to build a restaurant and to build a garage and, you know. Correct. Except we have an option here. We have an option which is viable today between the A's and the city of San Jose. That's a contract that has been interfered with. And, by the way, the court has allowed us to proceed on that basis. He didn't throw that out. He sent us back to state court on that. We're moving ahead to state court. So how does that make an antitrust injury? You may have a contract claim or an interference of contract claim, but what makes that antitrust? I think it goes right to the heart of antitrust injury in that this specific segregated market has risen to the injury that San Jose is suffering, i.e., because it is a segregated market, because there's an economic wall that has been built around the city of San Jose, the 10th largest city in the country, because of a document that is signed by 30 clubs that says no team may move in there. There is definite economic injury, antitrust injury, if you have this document, the agreement, the so-called constitution of Major League Baseball that says you cannot move into San Jose. San Jose has a contract with a team. It has a team with the A's to move in there, and they're saying you cannot do that. That's about as clear economic – I don't sit where you sit, but to me that's about as clear economic injury as it gets. Now, what is the case? I'd like to just say what the case is all about. Economic injury is different from antitrust injury. Oh, I think it gives rise – Not all economic injuries are antitrust injuries. And I think we've said it in a brief. I could talk about it at infinitum about the economic injuries. Economic injuries goes right to the heart of the constitution of Major League Baseball that says only we can agree, only we can agree as to where the clubs will play. That is economic injury to someone who has a contract with the club. So what's the case all about? This is really about the business of baseball, because the argument of Mr. Kecker in Major League Baseball is that the exemption gives rise to this immunity, if you will. And that's what all these courts have struggled with. Courts are no longer struggling with this issue. Four days ago, Judge Scheinman in New York issued that incredible opinion that says broadcasting of baseball games has nothing to do with the so-called exemption that came out of and articulated by Justice Blackmun in flood. Incredible has multiple meanings, and I'm not sure you want to be using that term. I apologize. What is that term? Well, the term incredible has multiple meanings, and I suspect your colleagues across the aisle would agree with the term incredible, but it means something differently. Your Honor, I am just a country lawyer who understands the word. That's when I start counting my money. So if I just walk over here a minute, because I couldn't find a movie analogy, what this case is all about is about this club and about this baseball. Since I couldn't find a movie analogy to bring as a demonstrative, the issue here is can baseball decide that everything they do from jackets to baseballs to gloves, can they monopolize that, if you will? The answer is, as Scheinman just said last week four days ago, of course not. The answer is, as Justice Alito said just a couple of years ago when addressing the Supreme Court in recite this in our papers, he questions seriously the broadness of this exemption. That's in his article, not in his opinions. I apologize. I apologize greatly. That's the difference. But I thought I – Isn't that the difference? It's a big difference. You're absolutely right. But I thought perhaps the thought of someone who sits on the Supreme Court might be instructive or at least give us guidance as to how we interpret that exemption. So when I look at Justice Blackmun in the flood case, he specifically said, quote, unquote, the baseball's reserve system. Now I want to go back to Portland because I think this really grabs me. We know that he turned on the reserve system. It's a misnomer as to what the reserve system means. It means in every case it's come up that way. You see, in – You don't think the Supreme Court invited Congress to change it and Congress has not seen fit to change all of it? The answer is no. The answer is, and I know where you're going because I have said Congress has never changed this, but that's not the issue. The issue before us is how big is the exemption? And that was dealt with just last week by Judge Scheinman. It was dealt with in flood versus skew. They said it's limited to the reserve system. Now I want to go to Portland baseball because Portland baseball is instrumental here in how we look at the reserve system. What was Portland baseball that I'm holding in my hand all about? It was about the reserve system. It was about a minority club. It was whether or not Major League Baseball, and in those days, Bowie Kuhn, the commissioner, could come in and essentially put them out of business. And what the court held, what this court held – Sorry, Mr. Kuchet. Yeah. I don't understand much of this baseball stuff. That's why I brought the baseball in the glove, Your Honor. Right. I understand that part, and I think I know what happens on the field when it happens. A lot of times nothing happens, but whenever it happens, I sort of get it. But I don't understand how this reserve system, what it has to do with the claim in Portland baseball. To me, it sounded very much like the claim here. Yeah. A team wants to move into a territory where they're not allowed to move in. Why are they quite dissimilar? Sure. What they essentially said was, Major League Baseball, what Major League Baseball said in Portland was, we can come in and put you out of business, and we're exempt from doing that. We can, with the usage of our minority farm system, our minority teams. I don't mean minority racially. I mean minority smaller teams, next level down. That's the one distinguishing feature that football does not have, basketball does not have, hockey does not have. No clubs have the system that was looked at back in 1922, and then in 1952, and then in 1973 in flood. They all distinguish what is the reserve clause, what is the exemption about. Every court that's looked at it, they don't sometimes use the term reserve clause. You know what the reserve clause is. Oh, I do. It doesn't sound like anything having to do with Portland baseball. The reserve clause is the revision that used to be in individual player contracts that required that player to stick with that team into the future. That's correct. What does that have to do with Portland baseball? Because what happened is courts have expanded the reserve clause to say that major league baseball can dominate and or they're exempt from the antitrust laws from exercising that reserve clause as it applies to anything else, the business of baseball. And the argument here is what is the business of baseball. You said courts have expanded, and it looks to me like Portland baseball is one of those decisions where courts have applied it outside the context of the reserve clause. You're trying to tell me that Portland baseball is about the reserve clause. I don't see it. Okay. Well, I look at it as if I've read the case. You've read the case. It doesn't say very much, but we don't. That's the problem. There's no name of a player in the caption. That is absolutely correct. That is absolutely correct. There is no name of a player, but it doesn't say very much. It doesn't talk about it. All it talks about is the exemption. So, really, when you analyze Portland baseball, and it's talking about the minority club and what... Minor, minor league, not minority. I apologize. Minor league club and what it can do to it. That is, in essence, the reserve clause as I understand it. Now, we all agree, though, when you read the decision, it doesn't talk about the reserve clause, nor does Tolson. But we do know what happened with Tolson because we looked at the facts of the case. But the decision doesn't talk about the reserve clause in Tolson. It talks about the exemption. But we know that Tolson was a player who was transferred from a minor league club to another club and sued Major League Baseball. Under the antitrust laws. And they simply said, following federal baseball, that they have an exemption from antitrust laws. Well, what did Justice Blackmun do 20 years later? 21 years later, or whatever it was, he said, wait a minute. Tolson is really not a good guy for us because it doesn't say much. But if you look at the facts of Tolson, it was a baseball player. And here in CUNY, excuse me. And Flood was a baseball player. Flood was a baseball player. And Portland Baseball Club is not a baseball player. That is correct. But it's the same theory, meaning that you can't, you cannot sue Major League Baseball over minor league applications. Thank you. Thank you. The case is signed. You will stand submitted. We are adjourned. Thank you.
judges: KOZINSKI, SILVERMAN, CLIFTON